**JOHNSON et al. v. UNITED STATES.**

**No. 12178.**

Circuit Court of Appeals, Fifth Circuit.

April 16, 1948.

John M. Coe, of Pensacola, Fla., for appellants.

George Earl Hoffman, U. S. Atty., of Pensacola, Fla., and Hayford O. Enwall, Asst. U. S. Atty., of Gainesville, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellants were jointly indicted in the District Court of the United States for the Northern District of Florida in November, 1944, on six counts: (1) For conspiracy to commit four sets of offenses—(a) to carry on the business of wholesale liquor dealers without payment of tax, (b) to fail to keep a record of spirits received and disposed of while carrying on such business, (c) to engage in such business without a basic permit, and (d) to sell distilled spirits above the ceiling price. (2) The succeeding five counts charged the actual commission of the above four offenses, the fourth offense (d) being broken down into two counts (4 and 5) for two separate sales above the ceiling price. A jury trial resulted in a conviction of both defendants upon all counts and each defendant was sentenced to serve a year and a day on the first count, and Johnson was fined $1,000 and Whitehead $500 on each of the other five counts. Sentence of imprisonment was suspended, and each defendant was placed upon probation for three years, upon payment of the aggregate of fines imposed upon him. This appeal followed.

Appellants' specifications of error are: (1) that the court erred in denying their motion for acquittal on each count; (2) that the court erred in denying their motion for new trial on each count; (3) that the court erred in refusing to give the following charges:

(a) "The Court charges you that when two or more persons engage together in a course of business with no corrupt agreement to commit offense in so doing, the simple fact that one of them may in the course of their operations commit some offenses does not render either or both of them guilty of conspiracy."

(b) "The Court charges you that the sales representative of a distiller, who accepts a gratuity after the event, for alloting to a favored buyer more than his normal share of his employer's products, which products are sold within the ceiling price, does not by so doing commit the offense of selling such products above ceiling price."

Johnson and Whitehead were respectively the district manager for Florida and one of the Florida salesmen for James Barclay & Co., Ltd., distillers. Johnson's general duties were to fix quotas of liquor to be sold to different jobbers, to promote the trade, supervise the salesmen, and generally to direct Barclay's business. Whitehead's duties were to call upon the trade and to develop good will for his employer's brands, and in appropriate instances to collect on accounts that needed particular attention, and sometimes to withdraw liquor from the distributor (jobber), and deliver it to retailers. Under the law of Florida, a distiller may not sell direct to a retailer but only through a jobber. Barclay had as distributor the Kahn Grocery Co., at Pensacola. When, in 1943, the liquor shortage became acute, Johnson decided to assign to Kahn 50 cases of whiskey per month more than would be Kahn's normal allocation in order that Whitehead might withdraw those 50 cases for delivery to perferred accounts. Johnson asserts that this was done as part of a plan approved by the main office of Barclay & Co. at a sales meeting, to enable their salesmen to build up prestige for Barclay whiskeys by giving extra cases here and there where it was thought it would do the most good. Pensacola lies near a dry section of Florida, and Johnson and Whitehead testified that they were looking forward to the post-war period when competition for sales to "boot-leggers" in the dry territory would be very acute among the companies. They thought that if during the war-shortage they were in a position to supply key dealers with extra liquor from time to time, the trade in the dry territories would remember them kindly after the war. The 50 cases a month withdrawn from Kahn were invoiced as a rule to "Barclay & Co., c/o Joseph Johnson." In a few instances they were invoiced to the retailer. Whitehead sometimes would take the liquor from Kahn's establishment and deliver it himself to his favored retailer; sometimes the retailer would call for it himself. When Whitehead made the delivery, he usually collected the money and turned it over to Kahn. These sales apparently were made at ceiling price. One of Whitehead's preferred clients, one Pope, obtained in three different lots a total of about 290 cases of whiskey through Whitehead. After de-

livery of the first two lots but before delivery of the third and last, Pope slipped $1200 into Whitehead's pocket. Both testified that the money was intended as a gratuity.

The federal law, 26 U.S.C.A.Int.Rev. Code, § 3254, defines a wholesale liquor dealer as follows:

"Every person who sells, or offers for sale, foreign or domestic distilled spirits * * * in quantities of five wine-gallons or more to the same person at the same time, shall be regarded as a wholesale dealer in liquors, * * *."

Barclay & Co. had the proper basic permits to allow it to deal as distillers with distributors throughout the country. Appellants argue that they had the right to withdraw the liquor from Kahn and ship or deliver it as they did as agents of Barclay and that this course of action did not make of them wholesale liquor dealers. We do not agree. Appellants come directly within the meaning of the statutory definition of a wholesale liquor dealer, and on that count as on the two succeeding ones, re keeping required records and having a basic permit, their conviction was proper.

■■ The jury also had before it ample evidence to sustain the conspiracy charged, except as to that part that had to do with selling distilled spirits above the ceiling prices. Hence, appellants' conviction upon the conspiracy charge must be sustained. With respect, however, to Counts 4 and 5, which charge appellants with selling distilled spirits above the ceiling prices, the record is altogether unsatisfactory. The Government exhibits to establish these sales were not sent up and the discussion with reference to them on the part of the Government is complicated, labored, vague and inconclusive. The Government's case rests upon the assumption that Whitehead and Johnson were cooperating in handling the extra cases of whiskey assigned to Kahn. There is nothing in the record to show any connection of Johnson with the alleged illegal sales set forth in Counts 4 and 5, and the evidence to establish Whitehead's guilt is skimpy and unsatisfactory. We think that justice would best be served by reversing the conviction of both Johnson and Whitehead on Counts 4 and 5 and remanding the case as to these counts for a new trial.

■ The court's refusal to give the charges requested was harmless error in view of the court's general charge, which we think was favorable to the appellants and which presented to the jury appellants' defenses as favorably as the evidence before the court warranted.

The verdict and the sentences as set forth in the judgments appealed from are affirmed except as to the verdict and the sentences on Counts 4 and 5. As to Counts 4 and 5, the judgments on the verdict and the sentences imposed with respect thereto are set aside, and the cause is remanded for a new trial.